**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

---

Javier Rangel,

                Plaintiff,

-against-

UNITED STATES OF AMERICA;
U.S. DEPARTMENT OF STATE;
ANTONY J. BLINKEN, in his official capacity
as the United States Secretary of State; and
TIMOTHY WIESNET, in his official capacity
as Director of the Charleston Passport Center
operating for the U.S. Department of State;

                Defendants.

---

Civil Case No.

### COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND OTHER RELIEF

Plaintiff Javier Rangel (hereinafter, "Plaintiff" or "Mr. Rangel"), by and through his counsel, files this Complaint for Declaratory, Injunctive, and Other Relief against Defendants United States of America; United States Department of State; Antony J. Blinken in his official capacity as Secretary of State of the United States; and Timothy Wiesnet in his official capacity as the Director of the Charleston Passport Center for the United States Department of State. In support thereof, Plaintiff alleges as follows:

### INTRODUCTION

1.      This is an action to hold unlawful and set aside certain agency actions by the U.S. Department of State (hereinafter, "Department") that, in effect, deprive Plaintiff, a United States citizen born in the United States, a U.S. passport for international travel by holding his passport application to impermissible and unlawful heightened scrutiny because Plaintiff's birth was attended by a midwife outside of a hospital. This case is about the federal government denying Plaintiff his fundamental right to due process, equal protection, privacy, and his right not to be subject to arbitrary and capricious government action, in violation of the United States Constitution and federal law.

1

2.	Plaintiff is a U.S. citizen, born in the United States of America in Baytown, Texas, who properly submitted a fee-paid, substantiated application for a U.S. passport to the Department.

3.	For many citizens, applying for a passport is a routine affair that results in the Department processing an application and issuing a passport in a matter of weeks. Defendants, however, have not treated Plaintiff like other U.S. citizens.

4.	Plaintiff, who is of Mexican descent, was born in Baytown, Harris County, Texas on November 5, 1985. His birth certificate was properly filed with the Local Register on November 8, 1985, was received by the Texas Department of Health on January 8, 1986, and Plaintiff was issued a Texas birth certificate by the state Bureau of Vital Statistics. As was common in poor communities and communities of color, Plaintiff was born in a residence rather than a hospital, and his birth was attended by a midwife.

5.	On the basis of these common and innocent facts—Plaintiff's Mexican ancestry and a midwife assisted birth in a Southwestern border state—Defendants have held Plaintiff to a higher evidentiary burden than a typical applicant for a U.S. passport and demanded that Plaintiff furnish a litany of additional documents as well as disclose extensive private personal and family information that is outside the scope of the legal requirements for establishing U.S. citizenship and eligibility for a U.S. passport.

6.	Plaintiff's certified birth certificate, which he submitted to the Department in support of his application, met every legal requirement pursuant to 22 C.F.R. § 51.42(a) to serve as primary evidence of his birth in the United States for the purposes of applying for a passport. Plaintiff, further, timely supplied the Department, upon their request, with numerous supplemental documents in support of his application, showing his parents' established and continuous residence within the United States before, contemporaneously with, and after his birth.

7.	Despite this abundance of evidence in support of his U.S. citizenship, of which the Department acknowledges receipt, Defendants refused to recognize Plaintiff's citizenship and withheld his passport as they had "not received a completed statement regarding the facts of [Plaintiff's] birth,

2

schools attended, family members and residences" on their Form DS-5513, Supplemental Questionnaire

to Determine Entitlement for a U.S. Passport. Plaintiff supplied to the Department multiple credible and

uncontroverted documents as evidence to demonstrate that his birth occurred within the United States

"beyond a preponderance of the evidence," and still his application was summarily denied as "not

sufficient" because Plaintiff declined to provide private information that falls outside the scope of the

legal requirements for issuance of a passport and which other U.S. citizen applicants are not routinely

required to disclose. The numerous documents Plaintiff submitted to the Department to demonstrate his

parents' continuous residence in the United States at the time of his birth strongly supports the legitimacy

of his birth certificate, and Defendants' refusal to issue Plaintiff his passport as he is entitled to without a

clear and articulable reason except that he declined to divulge extensive and unnecessary private personal

information is arbitrary, capricious, without observance of procedure required by law, and a violation of

Plaintiff's constitutional right to both due process and equal protection under the Fifth Amendment.

       8.     An applicant for a U.S. passport must show by a preponderance of the evidence—that is

simply more likely than not—that the applicant is a U.S. citizen or national. In Plaintiff's case, however,

he has been subject to a heightened level of scrutiny and evidentiary standard that more so equates to "by

clear and convincing evidence" and even "beyond a reasonable doubt." Plaintiff providing a 22 C.F.R §

51.42(a) compliant form of primary evidence of his U.S. citizenship—which is typically all that a U.S.

citizen needs to submit in support of their citizenship—and a plethora of uncontroverted secondary

evidence. The Department, meanwhile, has failed to produce any evidence to challenge Plaintiff's U.S.

birth. Defendants have nevertheless found "insufficient evidence" in Plaintiff's case without rebutting a

single piece of evidence or claim that Plaintiff provided. Instead, Defendants *insist* that Plaintiff must

provide proof such as a baptismal certificate near the time of birth—which does not exist in Plaintiff's

case as his religious denomination does not baptize its members until they are at least twelve years of

age—and school records—all of which would be far less contemporaneous with Plaintiff's birth than the

evidence Plaintiff has provided—*and* that Plaintiff must complete the Form DS-5513, a "voluntary" form

which demands excessive disclosure of private personal and family information well beyond the scope of a typical passport application.

9.      Because Plaintiff has been deemed "suspicious" by virtue of his ancestry and midwife birth, Defendants have taken these facts as license to place an undue evidentiary burden on Plaintiff, who has complied with requests for supporting documentation to demonstrate his U.S. citizenship to the best of his ability given that he was born prior to prevalence of electronic recordkeeping. In exchange for the right to travel internationally—a right enjoyed by U.S. citizens who have provided even less documentation than Plaintiff has to date—Plaintiff's right to privacy and to control his own personal information is being put in jeopardy, unlawfully. Due process requires that Plaintiff's application be held to the same evidentiary burden as that of any other applicant. Here, Plaintiff has provided the same primary document meeting the same legal standard as any other applicant, along with additional documentation—much of which created contemporaneously with his birth—demonstrating his parents' stable and continuous residence in Baytown, Texas, yet he was still probed for personal information beyond the scope of that typically requested for applicant and subsequently denied a passport for "insufficient information." Due process also requires that Defendants provide clear and articulated reasons for their denial of this non-discretionary document beyond the conclusory allegation that Plaintiff's unchallenged evidence supporting his U.S. birth was "not sufficient" to establish that there was at least a 51% chance that Plaintiff was in fact born in the United States.

10.     In addition to the excessive evidentiary burden placed on Plaintiff simply by virtue of his Mexican heritage and midwife birth, Defendants' demands also deny Plaintiff equal dignity and protection under the law that other U.S. citizens are able to enjoy. A person who is similarly situated as Plaintiff, but for his Mexican heritage and midwife attended birth in a "border state," would *not* be subjected to the same level of heightened scrutiny nor demand for excessive disclosure as Plaintiff in this case. The Department asserts that the heightened evidentiary burden is justified as several midwives working in Southwestern border states were convicted or suspected of fraudulently registering births. These incidents alone, however, do *not* give Defendants a basis to violate the due process and equal

4

protection rights of midwife-delivered Mexican American passport applicants from Southwestern border states. Texas has a long history of midwife attended births, and many of these "suspicious" midwives also performed legitimate deliveries within the United States. That there has been suspicion and even conviction of fraudulent activity does not permit the Department to overlook relevant, credible, and contemporaneous evidence of U.S. birth, such as that which Plaintiff has provided. That the Department nevertheless denied Plaintiff's application for a passport—in light of the evidence supporting his birth was within the United States—with no explanation as to Plaintiff's deficiency except that he refused to divulge irrelevant personal and family history is discriminatory, a violation of Plaintiff's right against excessive government intrusion into his privacy, a violation of his right to equal protection under the law, and violation of his right to due process.

11. The Department's practice of subjecting passport applications by someone such as Plaintiff—a person of Mexican descent whose births was attended by a midwife—to heightened scrutiny and burdensome and excessive evidentiary demands is unconstitutional, but far from an isolated phenomenon. Rather, this conduct is part of a clearly observable pattern of discriminatory behavior. In 2009, the Department settled a class action lawsuit—Castelano v. Clinton—in which the Department agreed to implement new procedures to ensure the fair and prompt review of U.S. passport applications by Mexican Americans whose births in Texas were attended by midwives. Under the agreement, no eligible applicant—such as Plaintiff—should be denied a passport. Despite this agreement, the Department has continued to draw national attention from its ongoing pattern of applying heightened scrutiny and denying passport applications from those of Mexican ancestry who were delivered by midwives in a border state. In fact, such conduct has "skyrocketed" over the past few years.

12. Plaintiff alleges that by Defendants' ongoing discriminatory policy, pattern, and practice, Defendants named herein have deprived Plaintiff of due process and equal protection rights guaranteed to him under the Fifth Amendment of the United States Constitution, as well as his rights under the Administrative Procedure Act. Plaintiff thus seeks injunctive relief, a judicial declaration that Plaintiff is a U.S. citizen, and a judicial declaration that Defendants have exceeded their authority under the

Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2), and the Fifth Amendment to the U.S. Constitution.

## I.    JURISDICTION AND VENUE

13.    Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1346(a)(2) (actions against officers of the United States), 28 U.S.C. §§ 2201-2202 (Declaratory Judgment Act), 8 U.S.C. § 1503 (denial of rights and privileges as a U.S. citizen), and 5 U.S.C. §§ 701-702 (Administrative Procedure Act).

14.    Venue is properly vested in the Southern District of Texas pursuant to 28 U.S.C. § 1391(e) because Defendants are officers or employees of a U.S. administrative agency acting in their official capacity and the United States. Plaintiff submitted his application for a U.S. passport in Houston, Texas. In addition, Plaintiff resides in the Southern District of Texas, and no real property is involved in this action.

## II.    PARTIES

15.    Plaintiff Mr. Javier Rangel is a United States citizen of Mexican ancestry who was born in Baytown, Texas on November 5, 1985. He currently resides in Baytown, Texas.

16.    Defendant Antony J. Blinken is the duly appointed and confirmed Secretary of State for the United States. In this capacity, Defendant Blinken has the authority to grant and issue passports, and cause passports to be granted, issued, and verified in foreign countries by diplomatic and consular officers of the United States, and by such other employees of the Department of State who are citizens of the United States as he may designate. 22 U.S.C. § 211(a). Defendant Blinken is the head of the U.S. Department of State and responsible for setting and overseeing implementation of the policies and procedures employed by the agency and all its various subdivisions, including the Bureau of Consular Affairs. Defendant Blinken is sued in his official capacity.

17.    Defendant Timothy Wiesnet is the Director of the Department of State Charleston Passport Center. Director Wiesnet is sued here in his official capacity.

18.     The United States of America and the U.S. Department of State are also named Defendants.

### III.     STATEMENT OF FACTS & PROCEDURAL HISTORY

*Plaintiff's Background:*

19.     Plaintiff Javier Rangel was born in the United States in Baytown, Texas—a suburb of Houston, Texas—on November 5, 1985.

20.     At the time of his birth, Plaintiff's parents were both living in Baytown on a permanent, continuous, and full-time basis. Plaintiff's parents have been living together in Baytown since 1981.

21.     Plaintiff was born in a residence in Baytown and delivered by a midwife, who signed the birth certificate as the attendant at birth.

22.     Plaintiff's birth certificate was filed with the Local Registrar in Baytown, Texas on November 8, 1985, just three days after Plaintiff's birth. His birth certificate was officially registered with the Texas Department of Health and was filed on January 8, 1986, well within one year of Plaintiff's birth.

23.     The birth certificate contains information such as Plaintiff's full name, the names of both of his parents, his parents' Mexican national origin, the address in Baytown, Texas at which he was born, the date and time of his birth, that he was born with a midwife as the birth attendant, the date his birth certificate was received by the Local Registrar, the signature of the Local Registrar, the date the birth certificate was received by the Texas Department of Health Bureau of Vital Statistics, the seal of the Texas Department of State Health Services, and the signature of the State Registrar.

*Typical Passport Application and Processing Procedure:*

24.     A valid U.S. passport is required for a U.S. citizen to lawfully depart from or enter the United States. 8 U.S.C. § 1185(b).

25.    The Secretary of State has authority to grant and issue U.S. passports, as well as designate other employees of the Department of State to grant and issue U.S. passports. 22 U.S.C. § 211a; 22 C.F.R. § 51.5.

26.    A first time U.S. passport applicant must fill out the Form DS-11 and provide proof of U.S. citizenship, proof of identity, a recent 2 inch by 2 inch color photograph of the applicant meeting certain requirements, and the required fee. If the applicant is in the United States, the completed application with the supporting materials is then submitted to a passport acceptance facility or passport agency.

27.    The Form DS-11 requests that the applicant provide personal information to determine eligibility for a U.S. passport. The information requested on the form includes name, date of birth, place of birth, sex, social security number, email, phone number, mailing address and permanent address (if different), any other names the applicant has used, parental information including their places and dates of birth, marital history and information about the current or former spouse, occupation, employer or school (if applicable), height, hair color, eye color, travel plans (if applicable), and emergency contact information.

28.    Both the Form DS-11 and the Department's "Citizenship Evidence" page on its website reflect that a U.S. birth certificate is primary evidence of U.S. citizenship so long as the birth certificate meets certain requirements. Those requirements—the same as those articulated under 22 C.F.R. § 51.42— include that the U.S. birth certificate must be "issued by the city, county, or state of birth; lists [the applicant's] full name, date of birth, and place of birth; lists [the applicant's] parent(s)' full names; has the date filed with registrar's office (must be within one year of birth); and has the registrar's signature and the seal of the issuing authority." The example of an acceptable U.S. birth certificate as provided on the Department's website reflects these requirements, and the example notably fails list the "name of the individual who registered [the applicant's] birth" nor "the institution where the birth occurred," as was required of the Plaintiff's birth certificate by the Department in its April 30, 2019 notice, discussed *infra* paragraph 40.

8

29.    The Department typically processes routine passport applications in "up to 14 weeks."

30.    The issuance of a U.S. passport is not discretionary. The Department must issue a U.S. passport to an applicant who has proven their entitlement to a U.S. passport by a preponderance of the evidence and has no other grounds for denial as illustrated in 22 C.F.R. § 51.60—none of which are applicable in Plaintiff's case.

**Form DS-5513:**

31.    Pursuant to 22 C.F.R. 51.45, the Department may require an applicant to provide evidence "*necessary*" to establish an applicant's U.S. citizenship. (Emphasis added).

32.    Form DS-5513, Supplemental Questionnaire to Determine Entitlement for a U.S. Passport, is a form that the Department—at its discretion—may request a passport applicant complete when *needed* "in order to determine [an applicant's] entitlement to be issued a U.S. passport." (Emphasis added).

33.    Form DS-5513 does not appear on the Department's website on its "Passport Forms" page. The DS-5513 webpage includes the form itself, a bold header instructing that "the DS-5513 Form is used only at the written request of the passport agency or center," a brief description of the use of the form, also refers back to the Department's Citizenship Evidence webpage—the page mentioned *supra* paragraph 28, which provides the example of an acceptable U.S. birth certificate—for more information on proof of U.S. citizenship for a U.S. passport.

34.    Form DS-5513, Supplemental Questionnaire to Determine Entitlement for a U.S. Passport, is a voluntary form that is not to be completed by each passport applicant. Form DS-5513 is to be filled out only by specific request from the Department when "sufficient evidence of entitlement is *needed* to process [an applicant's] application for a U.S. passport." (Emphasis added).

35.    Like the Form DS-11—which all passport applicants must complete—Form DS-5513 requires the applicant provide information such as their name, date of birth, place of birth, social security number, and parents' names and place and date of birth. Unlike the DS-11, however, the Form DS-5513

probes much more intrusively into an applicant's private life and family history. Specifically, Form DS-5513 requires extensive disclosure as the applicant's extensive family information, including the full names, place of birth, date of birth, aliases, and citizenship of an applicant's parents, stepparents, siblings, and grandparents; information about the applicant's mother's medical history while pregnant with the applicant, including name of doctor, approximate dates of appointments, the name and addresses of facilities in which the applicant's mother received medical care, a description of the "birthing location," the length of time the mother stayed at the birthing location, as well as the names, address, and phone numbers of all persons who were present at the birth; the applicant's parents' legal status at the time of the applicant's birth including how they entered the United States; documents created within the first five years of the applicants life including baptismal records, birth announcements, and other medical records; the schools, day care centers, and development programs the applicant attended from birth to age 18; and all of the applicant's residences from birth to age 18.

36.     In the Privacy Act Statement in the 08-2016 edition of the Form DS-5513—which is the version that the Department sought to have Plaintiff complete—the form explicitly states that providing information on the form is voluntary, but "failure to provide [the applicant's] Social Security number on [the applicant's] passport application may result in denial of [the applicant's] application." This section of the form also advises that information an applicant provides on this form may be disclosed to other U.S. government agencies.

***Procedural History:***

37.     Plaintiff applied for a U.S. passport at the Passport Agency in Houston, Texas in or about March 2019.

38.     The Department responded by requesting additional documentation corroborating his birth on November 5, 1985 in Baytown, Texas.

39.     Plaintiff, now through counsel, responded to this demand in a letter dated March 18, 2019, by sending a variety of documents by hand delivery to the Passport Services Agency in Houston,

Texas. In the cover letter, Plaintiff was forthcoming about his midwife birth, acknowledged his burden of proof, and provided ten exhibits in support of his birth in the United States. The exhibits Plaintiff provided include Plaintiff's 22 CFR § 51.42 compliant birth certificate, issued by the Vital Statistics Unit of the Texas Department of State Health Services; a Citizens of Texas Savings and Loan Association Savings Account Certificate issued in 1984 to his parents, Raul Rangel and Brigida Vasquez, and reflecting their Baytown home address as well as transactions through October of 1986; a check stub for a part-time evening job his mother had in 1984; a separation notice from when his mother was laid off from that part-time job in 1984; a letter from his mother's physician Dr. Rafael R. Pardo in Baytown, Texas that Plaintiff's mother was under his care on March 7, 1985; his parents' U.S. Individual Income Tax Return from 1985; a declaration from the owner of El Lirio Tortilla Factory signed on March 1, 1988, swearing under oath that Plaintiff's mother had worked at the factory continuously since October 15, 1981, and reflected her Baytown home address; an affidavit signed in March 1988 from an acquaintance in Baytown who knew Plaintiff's mother since she arrived in Baytown in September 1981 and would take Plaintiff's mother to work; and Plaintiff's mother's Certificate of Naturalization from 2000 and contemporaneous petition to legally change her name to "Vicky Rangel."

40.     On April 30, 2019, the Department responded with a notice from its Houston Passport Agency office alleging that the birth certificate Plaintiff previously provided was not sufficient for passport purposes. The notice further explains that Plaintiff's previously provided birth certificate was lacking because it did not "list the individual who registered [his] birth and the name of the institution/location where [he] was born." It requested that Plaintiff send a sufficient birth certificate within ninety days of the date shown on the letter.

41.     Despite the Department's allegation in this April 30, 2019 notice being patently untrue as Plaintiff's previously provided birth certificate plainly stated that his birth was first registered by Eileen P. Hall, the Local Registrar in Baytown, and also clearly reflects that Plaintiff was born at the midwife's residence in Baytown, Plaintiff, through his counsel, responded on May 30, 2019 with another copy of his certified birth certificate sent via priority mail to the Houston Passport Agency office.

11

42.     On July 11, 2019, the Department send another letter, this time from its Charleston Passport Center office and signed by Defendant Wiesnet. This notice once again requested additional information regarding the factual circumstances of Plaintiff's birth; however, this request was prompted by the claim that the midwife in attendance at Plaintiff's birth has been "suspected of submitting false birth records." This notice specifically requested that Plaintiff fill out and return Form DS-5513, Supplemental Questionnaire to Determine Entitlement for a U.S. Passport, and for Plaintiff to attach additional early public records created as close as possible to the time of his birth. The notice contained an attachment entitled "Suggested Supplemental Documentation," which expressly emphasized records demonstrating the applicant's mother's presence in the United States at the time of the applicant's birth. Plaintiff was given ninety days to send his reply to a designated mailing address.

43.     Plaintiff responded in a letter mailed to the designated mailing address on August 16, 2019. In Plaintiff's reply—which requested Supervisor Review of the application—he provided a brief procedural history of his passport application thus far, a section highlighting that the issuance of a U.S. passport is not discretionary and that the burden of proof in establishing U.S. citizenship ship is by a preponderance of the evidence, that the evidentiary weight of "suspected" midwives should be considered in each individual case considering the evidence in support of a U.S. birth, and a description of the evidence which has already been submitted to the Department in support of Plaintiff's claim of U.S. citizenship, all of which was reattached to this reply. Plaintiff also declined to fill out the Form DS-5513 as this form was voluntary and he had already submitted sufficient evidence to demonstrate that parents had been living in Baytown, Texas for years prior to, during, and following his birth. Plaintiff did, however, submit exhibits, including those ten exhibits which were originally sent in his March 18, 2019 response, along with another certified copy of his birth certificate with raised seal, and a certified copy of his younger sister's birth certificate who was born in Baytown, Texas, a year after Plaintiff.

44.     On November 6, 2019, the Department sent another notice—again, through its Charleston Passport Center office and signed by Defendant Wiesnet—acknowledging receipt of Plaintiff's birth certificate and other public records. In this notice, the Department claimed that it was still unable to issue

12

Plaintiff a U.S. passport as they had "not received a completed statement regarding the facts of [Plaintiff's] birth, schools attended, family members and residences." The notice again insisted that Plaintiff complete the Form DS-5513, Supplemental Questionnaire to Determine Entitlement for a U.S. Passport, and submit it as soon as possible. The notice also appeared to request that Plaintiff provide additional early documents as well as his baptismal certificate. This notice gave Plaintiff sixty days to respond to the notice with the information requested, otherwise, his application would be reviewed based on this information already provided.

45.    On November 19, 2019, Plaintiff mailed his final reply—addressed to the return mailing address provided by the Department—and he, again, sought supervisory review of his application. Plaintiff, again, declined to fill out the DS-5513 explaining that it was unnecessarily to divulge the highly personal information when he had already provided an abundance of uncontroverted evidence in support his U.S. citizenship. Plaintiff, again, emphasized that the DS-5513 is a *voluntary* form that seeks information that is outside of the scope of information legally required for the Department to process Plaintiff's application for a U.S. passport. In his reply, Plaintiff emphasized that, beyond being born with a midwife who has been labeled "suspicious" in combination with his Mexican ancestry, there is no evidence to contradict his claim to U.S. citizenship, let alone all the evidence Plaintiff provided showing that his parents had lived in Baytown, Texas continuously since 1981. Plaintiff also cited the previously settled class action lawsuit Castelano v. Clinton, in which the Department had agreed to fairly adjudicate passport applications for people like Plaintiff—those of Mexican descent and born in a border state with a midwife in attendance—and to consider the evidence provided in its totality.

46.    On February 26, 2021, the Department sent to Plaintiff a final denial letter, signed by Defendant Wiesnet. The letter reflects that Plaintiff submitted a birth certificate issued by the Bureau of Vital Statistics Registrar's Officer in the State of Texas, that the birth certificate indicates that Plaintiff was born on November 5, 1985, in Baytown, Texas, and that the birth record was filed on November 8, 1985, by a birth attendant. The letter also acknowledged that Plaintiff had the burden of proving his U.S. citizenship by a preponderance of the evidence and that Plaintiff had provided supplemental

documentation to support his claim at the Department's request on August 20, 2019 and again on November 27, 2019. It then provided a conclusory finding that the additional documentation Plaintiff provided was not sufficient to establish by a preponderance of the evidence that he was born in the United States. The Department claimed that Plaintiff had "not submitted sufficient early public records to support [Plaintiff's] birth in the United States," and therefore could not be found to be entitled to a passport. Plaintiff's documents and exhibits provided were returned as enclosures with this denial letter.

47.     Except for the conclusory finding that the documentation Plaintiff provided was "not sufficient to establish by a preponderance of the evidence that [Plaintiff was] born in the United States" in this one-page letter sent by the Department on February 26, 2021, Plaintiff has not been notified as to *how* the evidence he provided failed to demonstrate that it was more likely than not that he was born in the United States. While Plaintiff has the burden to prove by a preponderance of the evidence—meaning simply more likely than not—that he was born in the United States, he provided an abundance of credible evidence toward his burden. Plaintiff submitted evidence such as the primary evidence of his birth certificate pursuant to 22 C.F.R. § 51.42, tax records filed by his parents the year of Plaintiff's birth, a letter from Plaintiff's mother's physician in Baytown dated the in March of 1985 prior to Plaintiff's birth, affidavits from employers and acquaintances who attested to Plaintiff's mother having lived and worked continuously in the United States from at least 1981-1988, the birth certificate of Plaintiff's sister from 1986, a Baytown bank account Plaintiff's parents opened in 1984 using their Baytown, Texas address and reflecting transactions close to the time of Plaintiff's birth, and Plaintiff's mother's pay stub from 1984.

48.     Defendants have made no claim that *any* of the documents provided which reflected Plaintiff's parents' continuous residence in the United State lacked credibility. Defendants have not produced any evidence that contradicts or challenges Plaintiff's claim to U.S. citizenship or the evidence provided. Defendants have provided no information as to how the records Plaintiff provided were insufficient to prove his citizenship or how his application was lacking, and—aside from Plaintiff's refusal to complete the voluntary Form DS-5513—Plaintiff has timely complied with every request the Department has issued to him regarding his application.

14

***Defendants' Arbitrary, Unreasonable and Burdensome Demands for Superfluous Supplemental Information:***

49.     Plaintiff properly complied with the U.S. passport application procedures. He filled out the required DS-11, provided the required passport photo, showed proof of identity, paid his fee, and submitted his birth certificate which met the requirements to be used as primary evidence pursuant to 22 C.F.R. § 51.42, the Department's website, and the Form DS-11.

50.     Despite Plaintiff's full compliance with passport application procedures, the Department's April 30, 2019 notice alleged that Plaintiff's birth certificate was insufficient because it failed to list "the individual who registered [Plaintiff's] birth" and the name of "the institution/location where [Plaintiff] was born."

51.     First, this allegation that Plaintiff's birth certificate was lacking the information described was patently in error as Plaintiff's birth certificate reflected both the signature of Local Registrar Eileen P. Hall as well as the address at which Plaintiff was born.

52.     Second, the Department's "requirement" that Plaintiff's birth certificate list the name of the person who registered the birth certificate as well as the address of Plaintiff's birth is arbitrary and capricious as this instruction is clearly more burdensome than the legal requirements for a birth certificate to serve as primary proof of U.S. citizenship pursuant to 22 C.F.R. § 51.42, the Department's website, and the DS-11.

53.     The exhaustive legal requirements for a U.S. birth certificate to serve as primary evidence of U.S. citizenship, according to 22 C.F.R. § 51.42, the Department's website, and the Form DS-11 are that it must be "issued by the city, county, or state of birth; lists [the applicant's] full name, date of birth, and place of birth; lists [the applicant's] parent(s)' full names; has the date filed with registrar's office (must be within one year of birth); and has the registrar's signature and the seal of the issuing authority." The birth certificate that Plaintiff submitted fully complies with these requirements.

54.     After re-submitting his compliant birth certificate with a packet of evidence in support of his claim that he was born in the United States in Baytown, Texas, the Department *then* claimed in its

July 11, 2019 notice that the Department could not yet process his application because the midwife who delivered Plaintiff is "suspected of submitting false birth records."

55.     Plaintiff acknowledges that there were midwives who engaged as suspected of having engaged in fraudulent activity, but those midwives also legitimately delivered children within the United States, and such *legitimate* midwife attended births were common within the United States.

56.     According to the Department's own Preponderance of the Evidence Training Criteria as attached to the Castelano v. Clinton Settlement Agreement, the fact that an applicant's birth record shows birth with the assistance of a midwife, even a midwife on the "Suspicious Birth Attendants" list, is "not itself a basis for denying a passport application." "Rumor, innuendo, and speculation are not to be considered, and the exercise of judgment must be based on "an objective weighing of evidence, both pro and con, that can be specifically identified and articulated by the adjudicator." "[T]he Department must create a clear and articulate record of the reason(s) for denying a passport to an applicant."

57.     The only fact that the Department has articulated that weighs against Plaintiff's claim to birth within the United States is the fact that the midwife in attendance of Plaintiff's birth has been "suspected" of fraud. Pursuant to the Department's own standards, this fact alone *cannot* be the sole basis for denial given the amount of uncontroverted evidence that Plaintiff has provided demonstrating his parents' continuous residence in the United States in Baytown, Texas in the years before, contemporaneous with, and after his birth. The objective evidence reflects that, despite the "suspicious" midwife, Plaintiff's parents' ties to Baytown, Texas were well established prior to his birth by a variety of credible sources and documents, supporting his claim that he was born in the United States by a preponderance of the evidence.

58.     Defendants' conclusory denial of Plaintiff's passport application lack a "clear and articulate" record of their reasons for the denial. This action was arbitrary, capricious, and explicitly against the Department's policy as committed to pursuant to Exhibit B in the Castelano v. Clinton Settlement Agreement.

16

59.     Form DS-5513 should *only* be requested when the Department determines that there is "insufficient evidence of entitlement" for a U.S. passport is provided. Defendants have not, to date, provided any explanation as to how Plaintiff's evidence reflecting his U.S. citizenship is insufficient. Plaintiff provided what—for a typical applicant born in the United States—would be sufficient primary evidence of his birth in the United States in submitting his timely filed, properly certified, state issued birth certificate. Plaintiff had also already provided the Department with evidence of his parents' continuous residence in the United States starting in 1981.

60.     Any doubt cast on Plaintiff's claim to having been born in the United States due to the "suspicious" midwife in attendance at his birth is overcome by the multiple forms of evidence provided from multiple different sources reflecting that his mother not only lived, but banked, worked, had friendships, sought medical treatment, paid taxes, and had another child all in Baytown, Texas in the United States.

61.     Because Defendants have been unable to articulate how Plaintiff's primary evidence of U.S. citizenship is lacking in light of the evidence Plaintiff has submitted in support of his claim to citizenship, Defendants' finding that it was "necessary" that Plaintiff complete the Form DS-5513 as well as Defendants' insistence that Plaintiff complete the form against his wishes, is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law.

62.     Further, Defendants' delay in processing Plaintiff's application, their request and insistence that Plaintiff complete the Form DS-5513, and their ultimate denial of Plaintiff's application without a clear and articulated reason is a violation of Plaintiff's Fifth Amendment right to both Due Process and Equal Protection as provided in the U.S. Constitution.

63.     Plaintiff is one of many in recent history who, because of his Mexican ancestry and midwife-attended birth, has been singled out by Defendants and had his claim to citizenship subjected to heightened scrutiny beyond that which is typically applied in adjudicating passport applications.

## CLAIMS FOR RELIEF

### First Cause of Action - Administrative Procedure Act
(Arbitrary and Capricious)

64.     Plaintiff incorporates by reference all of the preceding paragraphs of this Complaint as though fully set forth herein.

65.     The APA empowers the Court to "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to a constitutional right, power, privilege, or immunity; in excess of statutory jurisdiction, authority, or limitations…; without observance of procedure required by law[.]" 5 U.S.C. § 706(2)(A)-(D). Agency action is arbitrary and capricious if it is not the product of reasoned decision making. This means, among other things, that an agency must provide an adequate evidentiary basis for its action and consider all important aspects of the problem before it.

66.     Defendant's refusal to accept Plaintiff's legally sufficient birth certificate as primary evidence in support of Plaintiff's claim to U.S. citizenship by claiming—inaccurately—that it was lacking the "individual who registered [Plaintiff's] birth and the "name of the institution/location where [Plaintiff was] born" is not in accordance with law pursuant to 22 C.F.R. § 51.42, is arbitrary and capricious, and is without observance of procedure required by law.

67.     Defendants' failure to provide a reasoned explanation as to why Plaintiff's submitted evidence was "insufficient" and it therefore "necessary" to insist that Plaintiff divulge private personal and family information on the Form DS-5513, ultimately holding Plaintiff's application to a much higher evidentiary standard and level of scrutiny, is arbitrary, capricious, an abuse of their discretion to request further information from applicants, and contrary to Plaintiff's constitutional right to privacy and freedom from unwarranted government intrusion.

68.     Defendants' failure to provide a reasoned explanation of their finding that the evidence that Plaintiff provided was "not sufficient to establish beyond a preponderance of the evidence that [Plaintiff was] born in the United States" when Plaintiff did submit legally compliant primary evidence of

his birth within the United States as well as uncontroverted supporting secondary evidence of his birth in the United States, is arbitrary, capricious, an abuse of discretion, in excess of their statutory authority, and not in accordance with law pursuant to 8 U.S.C. § 1401; 22 U.S.C. § 211a; 22 C.F.R. §51.2; 22 C.F.R. § 51.42; and their commitments made pursuant to the Castelano v. Clinton Settlement Agreement.

69.     Defendants' failure to provide individualized adjudication on the merits of Plaintiff's passport application, which was singled out because his birth was attended by a "suspicious" midwife as well as his perceived Mexican ancestry, and their refusal to issue Plaintiff's passport despite his compliance with the same legal procedures and standards that are required of first-time passport applicants who were born within the United States, is arbitrary, capricious, not in accordance with law, without observance of procedure required by law, and contrary to Plaintiff's constitutional right to due process and equal protection under the Fifth Amendment.

70.     Plaintiff has suffered a legal wrong and has been adversely affected and aggrieved by Defendants' actions with their arbitrary and capricious conduct, and the agency action, along with their policy, pattern, and practice of placing undue heightened scrutiny and burdensome evidentiary demands on applications submitted by applicants of Mexican ancestry with a midwife attended birth has caused, and will continue to cause, irreparable injury to Plaintiff.

### Second Cause of Action - Administrative Procedure Act
(The Department's Conduct Exceeds the Authority Delegated by Congress)

71.     Plaintiff incorporates by reference all of the preceding paragraphs of this Complaint as though fully set forth herein.

72.     The APA empowers the Court to "hold unlawful and set aside agency action, findings, and conclusion" that are "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C).

73.     Pursuant to 22 U.S.C. § 211a, Defendant Blinken has the power to grant and issue passports as well as cause passports to be granted by those acting under him. Any exercise of delegated

powers to curtail personal freedoms, such as the freedom to travel or the freedom to control private facts about oneself free from unwarranted governmental intrusion, must be construed narrowly.

74.    The Department engages in an unlawful practice of imposing a heightened evidentiary burden on some applicants based on suspicions related to an applicant's ancestry and whether they were born with a midwife in attendance instead of in a hospital.

75.    22 U.S.C. 211a does not expressly or implicitly authorize Defendants to refuse to issue a passport unless and until the applicant complies with every request for information documenting personal and family history and which goes beyond the scope and volume of information that is legally required to make a finding of U.S. citizenship, especially in Plaintiff's case where the Department could not articulate any specific "insufficiency" among the abundance of evidence that Plaintiff provided.

76.    The final agency action by the Department against Plaintiff in denying a passport for failure to provide "sufficient" evidence after Plaintiff's refusal to disclose unnecessary private information on the Form DS-5513 is unlawful and beyond Defendants' legal authority.

77.    Plaintiff has suffered a legal wrong and has been adversely affected and aggrieved by the Department's exceeding its authority delegated by Congress, and its agency action must therefore be set aside and permanently enjoined.

### Third Cause of Action – Deprivation of Due Process
(Violation of Due Process under the U.S. Const. Amend. V)

78.    Plaintiff incorporates by reference all of the preceding paragraphs of this Complaint as though fully set forth herein.

79.    The APA empowers the Court to "hold unlawful and set aside agency action, findings, and conclusions" that are "contrary to constitutional right, power, and privilege, or immunity." 5 U.S.C. §706(2)(B). In addition, this Court has authority under 28 U.S.C. § 1331 and its traditional powers of equity to declare invalid and enjoin agency action that violates the Constitution.

80.     Where a Complaint contends that agency action offends the Constitution, the Court affords no deference to the agency but instead reviews the constitutional issues independently.

81.     The Fifth Amendment to the United States Constitution provides that no person shall "be deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V.

82.     Defendants' conduct in treating Plaintiff as categorically suspicious, subjecting him to burdensome and excessive demands for additional evidence, imposing a heightened burden of proof, and failing to provide any clear and articulable reason for finding that all of the evidence that was submitted, when considered in its totality, was still "not sufficient" to support Plaintiff's claim for U.S. citizenship by a preponderance of the evidence, violates the Due Process Clause of the Fifth Amendment to the U.S. Constitution.

83.     The Due Process Clause has a substantive component that provides heightened protection against government interference with fundamental rights and liberty interests.

84.     The right to international travel and freedom of movement without undue government restriction is one of the fundamental liberty interests protected by the Due Process Clause of the Fifth Amendment. While the ability to travel abroad may be regulated within the bounds of due process, the government subjecting an applicant to a restraint not shared generally by the general public is an unconstitutional restriction on freedom.

85.     The benefit of being issued a passport after demonstrating eligibility is a property interest to which eligible U.S. citizen applicants are entitled.  When a statute or rule creates a right or entitlement, that entitlement is "property" subject to the procedural protections of the Due Process clause. *See Goss v. Lopez*, 419 U.S. 565, 572-73 (1975).

86.     Because Plaintiff was held to an unlawfully heightened burden of proof—as demonstrated by Defendants' finding that the evidence provided to support his application was "not sufficient" after Plaintiff complied with the requirements imposed on all citizens to receive a passport and then provided additional documents supporting his claim to birth within the United States—he was unconstitutionally denied the right to a passport and to travel internationally. The issuance of a passport to

21

an applicant who has demonstrated eligibility is not discretionary, and Defendant's unlawful conduct has placed undue restrictions on this liberty interest as well as the property interest in the benefit of obtaining a passport.

87.    The Fifth Amendment's Due Process Clause also protects each person's fundamental liberty to individual dignity and autonomy, including the right to control private information about oneself and make decisions regarding their family life, all without undue government interference.

88.    Though Defendants have authority to request more information from passport applicants as *needed*, this authority is exceeded when the government attempts to arbitrarily demand private personal and family information from an applicant when the applicant has provided unchallenged evidence supporting the legitimacy of their birth certificate as a primary form of citizenship evidence. Here, Defendants took no articulable issue with any of the numerous pieces of evidence that Plaintiff provided, nor did they provide any evidence to rebut Plaintiff's claim that he was born within the United States. Defendants' repeated insistence that Plaintiff disclose information on Form DS-5513 was unnecessary without first adjudicating the evidence that was provided. Defendants attempted a legally unnecessary intrusion into Plaintiff's private information and family affairs after holding his application to an unlawfully high evidentiary standard, and Plaintiff's proper exercise of his right to privacy was a central cause of his denied passport application. Plaintiff's liberty interest in controlling his own personal and family information was deprived without sufficient procedure, and is therefore a violation of the Fifth Amendment to the United States Constitution.

89.    By Defendants' failure to provide Plaintiff with an articulated reason as to how his submitted evidence in support to his passport application was lacking or as to why the completion of the DS-5513 was "needed," Defendants have denied Plaintiff adequate due process, his fundamental liberty interest in international travel as well as in personal decision-making central to individual autonomy and privacy in family life, and his fundamental property interest to a benefit to which he has demonstrated entitlement, all in violation of the Fifth Amendment to the United States Constitution. Defendants'

violations will continue if Plaintiff is not afforded the relief requested. Defendants' actions must therefore be set aside and permanently enjoined.

### Fourth Cause of Action – Deprivation of Equal Protection
(Violation of Equal Protection under the U.S. Const. Amend. V)

90.    Plaintiff incorporates by reference all of the preceding paragraphs of this Complaint as though fully set forth herein.

91.    The APA empowers the Court to "hold unlawful and set aside agency action, findings, and conclusions" that are "contrary to constitutional right, power, and privilege, or immunity." 5 U.S.C. §706(2)(B). In addition, this Court has authority under 28 U.S.C. § 1331 and its traditional powers of equity to declare invalid and enjoin agency action that violates the Constitution.

92.    The Fifth Amendment to the United States Constitution provides that no person shall "be deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. The Due Process Clause of the Fifth Amendment includes a guarantee of equal protection equivalent to that expressly provided for under the Equal Protection Clause of the Fourteenth Amendment.

93.    People such as Plaintiff—who is Latino, whose parents are of Mexican national origin, and who were born in border state in the United States with a midwife in attendance—are similarly situated to people who acquired U.S. citizenship by being born within the United States in all of the characteristics relevant to issuance of a passport by the Department. Plaintiff, like other citizens, may seek to travel abroad for job and business opportunities; for cultural, political, and social activities; or for all the reasons that any other person may have.

94.    Defendants' practice of applying a heightened scrutiny and evidentiary burden to applicants of Mexican ancestry who were births were attended by midwifes discriminates against Plaintiff on the basis of race and national origin of his parents, both facially and as applied, by barring Plaintiff from obtaining a passport under the same level of scrutiny and burden applied to other U.S. citizen

applicants. For example, if Plaintiff had been born in a hospital instead of at a residence and delivered by a midwife, Defendants would have issued Plaintiff a passport.

95.    Defendants' conduct is impermissibly premised on assumptions, suspicions, and stereotypes of Mexican immigrant parents as well as of midwives who served Hispanic communities.

96.    Plaintiff provided evidence to overcome the suspicion surrounding his midwife birth but has nevertheless been excluded from receiving a passport unless he meets a substantially higher evidentiary burden then what is expected from other U.S. citizen applicants.

97.    Defendants' decision to take Plaintiff's race, ancestry, and ethnicity into account, and base decisions on the same, when processing their passport applications and applying a heightened evidentiary burden on this basis, is unconstitutional and violates Plaintiff's Fifth Amendment protected right to equal protection.

98.    Regardless of whether Defendants can articulate a compelling government interest, this practice of holding Plaintiff's applicant to a higher evidentiary burden and requiring disclosure beyond what is legally necessary is certainly not narrowly tailored.

99.    Defendants' conduct deprives Plaintiff of equal protection and equal liberty and dignity without due process, in violation of the Fifth Amendment to the United States Constitution, and will continue to do so if Plaintiff is not afforded the relief requested. Defendants' actions must therefore be set aside and permanently enjoined.

**Fifth Cause of Action – Declaratory Relief of United States Citizenship**
(Unlawful Withholding of a Right and Privilege as a United States Citizen)

100.    Plaintiff incorporates by reference all of the preceding paragraphs of this Complaint as though fully set forth herein.

101.    Plaintiff has been denied rights and privileges claimed as a citizen of the United States, within the meaning of 8 U.S.C. § 1503, by virtue of the denial of his application for a U.S. passport and

consequent inability to travel freely. Therefore, Plaintiff is entitled to bring a declaratory judgment action under 8 U.S.C. § 1503, seeking a declaration that he is, indeed, a U.S. citizen.

## **PRAYER FOR RELIEF**

WHEREFORE, it is respectfully requested that in view of the above, this Honorable Court grant the following relief:

1) Assume jurisdiction over this matter;

2) Issue a declaratory judgment that Defendants' practice of treating Plaintiff and others of Mexican ancestry born to midwives as categorically suspicious; subjecting them to arbitrary, burdensome, and excessive demands for additional evidence; imposing a heightened burden of proof; and failing to provide an articulated reason for denying the application when the evidence that had been provided fit within the category of "suggested secondary evidence" and remained uncontroverted or otherwise challenged by Defendants, violates due process, equal protection, the Administrative Procedure Act, and other applicable law;

3) Permanently restrain or enjoin Defendants from applying its discriminatory practice of applying a heightened evidentiary standard to passport applications submitted by citizens born with a midwife in attendance;

4) Permanently restrain or enjoin Defendants from applying its discriminatory practice of requesting Plaintiff and applicants like Plaintiff divulge highly personal private and family information on the Form DS-5513 when there has been no articulable reason given as to how the evidence provided in support of the applicant fails to demonstrate citizenship by a preponderance of the evidence;

5) Issue a declaratory judgment that Plaintiff is a United States citizen and permanently restrain and enjoin Defendants from withholding the requested passport;

6) Award attorney's fees, costs, and expenses of all litigation in accordance with law, including the Equal Access to Justice Act, 28 U.S.C. § 2412; and

7) Grant all such other and further relief as the Court may deem just and proper.

Respectfully submitted, this February 16, 2022.

Luis Ruiz, Esq.
Attorney-in-Charge for Plaintiff
Texas State Bar No. 24093083
Southern District of Texas No. 3708032
The Law Offices of Luis Ruiz
600 Ward Rd.
Baytown, Texas 77520
Telephone: 832-390-4664
Facsimile: 281-652-5704
Email: lruiz@luisruizlaw.com