United States District Court
Southern District of Texas
**ENTERED**
February 21, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| Javier Rangel, | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | Case No. 4:22-cv-00553 |
| United States of America, *et al.,* | § § § | |
| *Defendants.* | § § | |

## <u>MEMORANDUM AND RECOMMENDATION</u>

Defendants United States of America, U.S. Department of State, Antony Blinken, and Timothy Wiesnet (collectively, the "Government") filed a motion to dismiss this suit under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), which was referred to the undersigned judge. Dkts. 12, 24. After carefully considering the motion, the response filed by Plaintiff Javier Rangel, Dkt. 22, the Government's reply, Dkt. 23, and the applicable law, it is recommended that the Government's motion be granted.

## <u>Background</u>

This case addresses allegations that the U.S. Department of State (the "Department") subjected a passport application to heightened scrutiny because the applicant is of Mexican descent and his birth was attended by a midwife.

### A.     Factual background

According to the complaint, Rangel applied for a U.S. passport by completing the required form and submitting to the Department a fee, photo, and certified birth certificate issued by the Texas Bureau of Vital Statistics. Dkt. 1 ¶¶ 10, 26-28, 37, 49.  The Department requested further documentation to corroborate Rangel's birth in Baytown, Texas.  *Id.* ¶ 38.

Rangel asserts that the Government held him to a "higher evidentiary burden than a typical applicant for a U.S. passport and demanded that Plaintiff furnish a litany of additional documents as well as disclose extensive private personal and family information."  *Id.* ¶ 5.  Rangel contends that he provided numerous documents that demonstrate his parents' continuous residence in the United States to support the legitimacy of his birth certificate. *Id.* ¶ 39.  The Department responded that the birth certificate was insufficient because it did not list the individual who registered his birth certificate or the place Rangel was born, and the Department required a sufficient birth certificate within ninety days.  *Id.* ¶ 40.

Rangel, through counsel, responded by resubmitting the birth certificate, which Rangel asserts did in fact indicate who registered the birth and where he was born.  *Id.* ¶ 41.  The Department then sent a letter from its Charleston office, signed by Wiesnet, requesting more information because the midwife

who attended Rangel's birth was suspected of submitting false birth records. *Id.* ¶ 42.  Wiesnet also requested that Rangel complete Form DS-5513.  *Id.*

Rangel resubmitted all his prior evidence allegedly substantiating his birth in Baytown, Texas, along with certified copies of his birth certificate and his younger sister's birth certificate.  *Id.* ¶ 43.  But Rangel refused to complete the Form DS-5513.  *Id.*  Wiesnet acknowledged receipt of these records and informed Rangel that the Department had not received the DD-5513.  *Id.* at ¶ 44.  Rangel mailed a reply stating that the form DD-5513 is voluntary and that he did not want to divulge personal information.  *Id.* ¶ 45.  He insisted that the documents he had already provided establish that his parents had continuously lived in Baytown, Texas, prior to and since his birth.  *Id.*

On February 26, 2021, the Department sent Rangel a final letter, signed by Wiesnet, declining to issue a passport because Rangel did not submit "'sufficient early public records'" to show he was born in the United States.  *Id.* ¶ 46.  According to the complaint, this denial indicated that his evidence "was not sufficient to establish by a preponderance of the evidence that [Rangel] was born in the United States."  *Id.*

## B.    Rangel's claims in this suit

Rangel filed this suit against the Department, the U.S. Secretary of State, the Director of the Department of State Charleston Passport Center

3

(Wiesnet), and the United States. *Id.* at 1. He asserts claims under the Administrative Procedure Act (APA) and the Fifth Amendment to the U.S. Constitution for due process and equal protection violations. *Id.* ¶¶ 64-101.

With regard to the APA, Rangel claims that the following conduct was arbitrary and capricious in violation of 5 U.S.C. § 706(2)(A)-(D): the Government's (1) refusal to accept his birth certificate as primary evidence of citizenship, citing 22 C.F.R. § 51.42; (2) holding him to a higher burden by requiring him to submit private personal information on Form DS-5513; (3) failure to provide a reasoned explanation as to why the evidence he submitted was insufficient; and (4) refusal to issue his passport because his birth was attended by a "suspicious" midwife and he was perceived to be of Mexican ancestry. *Id.* ¶¶ 66-69. He also asserts an APA claim under 5 U.S.C. § 706(2)(C), challenging the refusal to issue his passport without a completed Form DS-5513, when 22 U.S.C. § 211a "does not expressly or implicitly authorize [the Government] to refuse to issue a passport unless and until the applicant complies with every request for information ...." *Id.* ¶¶ 74-76.

With regard to the alleged Fifth Amendment due process violation, Rangel asserts that the court has authority under 28 U.S.C. § 1331 to issue a declaratory judgment and injunction if an agency action violates the U.S. Constitution, and that the Court may do so pursuant to 5 U.S.C. § 706(2)(B).

4

*Id.* ¶ 79.  Rangel contends that The Government violated his right to due process for all the reasons they allegedly violated the APA and because the denial of his passport infringes his right to travel internationally.  *Id.* ¶ 86.

For his Fifth Amendment equal protection claim, Rangel claims that the Government wrongfully subjects applicants of Mexican ancestry whose births were attended by midwives to heightened scrutiny and evidentiary standards than similarly situated individuals "who acquired U.S. citizenship by being born within the United States."1  *Id.* ¶ 93.  He contends that this practice "discriminates against Plaintiff on the basis of race and national origin of his parents, both facially and as applied ...."  *Id.* ¶ 94.

Rangel seeks a declaration and an injunction.  He invokes the Declaratory Judgment Act and 8 U.S.C. § 1503, requesting that the Court declare that the Government deprived him of the rights and privileges as a citizen of the United States within the meaning of 8 U.S.C. § 1503 and that its practice of imposing a heightened evidentiary burden to those of Mexican ancestry whose birth was attended by midwives, among other things, violates due process, equal protection, and the APA.  *Id.* ¶¶ 100-01.  Additionally, he

---

1 This aspect of Rangel's complaint is unclear since he claims that he, too, was born within the United States.  Reading the complaint as a whole, the Court presumes Rangel's equal protection claim asserts that people who are not of Mexican ancestry whose births were not attended by midwives were not required to submit the additional information that the Department required of Rangel.

requests the court to permanently enjoin the Government from continuing the challenged practice of demanding that individuals of Mexican heritage whose births were attended by midwives divulge personal information on the DS-5513 form if the Department does not articulate how the provided evidence fails to support the passport application. *Id.* at 25.

The Government moved to dismiss all of Rangel's claims except his request under 8 U.S.C. § 1503 for a declaratory judgment of U.S. citizenship against Antony Blinken, in his official capacity as Secretary of State. Dkt. 12 at 1. Rangel responded, Dkt. 22, and the Government filed a reply, Dkt. 23.

## Legal Standard

The Government seeks dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). "Under Rule 12(b)(1), a claim is 'properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate' the claim." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012) (quoting *Home Builders Ass'n, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)). The plaintiff bears the burden to establish that subject-matter jurisdiction exists. *Id.* "Lack of subject-matter jurisdiction may be found in the complaint alone, the complaint supplemented by the undisputed facts as

evidenced in the record, or the complaint supplemented by the undisputed facts plus the court's resolution of the disputed facts." *Id.* at 287.

To survive dismissal under Rule 12(b)(6), a party must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

## Analysis

**I.** **The Court lacks subject-matter jurisdiction over Rangel's claims other than for a declaration of citizenship under 8 U.S.C. § 1503(a).**

The Government first asserts that the Court lacks subject matter jurisdiction over Rangel's claims except for the one asserted against Secretary Blinken under § 1503(a). Dkt. 12 at 1. The Government argues that (1) § 1503(a) precludes the APA claims; (2) there is no waiver of sovereign immunity for the constitutional claims; (3) the claims for injunctive and declaratory relief exceed Congress's narrow remedy for claims relating to denial of a passport; and (4) the "Little Tucker Act" does not provide the remedy Rangel seeks. *Id.* at 3-6. The Court addresses each of these assertions in turn.

**A.      Under 5 U.S.C. § 704, Rangel's APA claims are barred by sovereign immunity because 8 U.S.C. § 1503 provides an adequate remedy.**

With respect to Rangel's APA claims, the Government contends that the APA only waives sovereign immunity when no other judicial remedies are available, and here 8 U.S.C. § 1503(a) provides Rangel a remedy for the denial of a passport.  Dkt. 12.  Rangel responds that the purpose of the APA's waiver of sovereign immunity is to "'broaden the avenues of judicial review of agency action by eliminating the defense of sovereign immunity,'" and action under the APA is only precluded if another statute "provides an *adequate* remedy for the grievance asserted."  Dkt. 22 at 3-4 (quoting *Bowen v. Massachusetts*, 487 U.S. 879, 892-93 (1988)).  Rangel asserts that he complains of more than a simple denial of a passport; instead he seeks redress for injuries related to the passport adjudication process.  *Id.* at 6.  He thus contends that § 1503, which provides a remedy for denial of the passport, is not adequate to address those injuries.  *Id.* at 6–7.

## 1.      APA 704's waiver of sovereign immunity

The Court's jurisdiction in lawsuits filed against the federal government and its agencies is defined in terms of the government's "'consent to be sued.'"  *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)).  In other words, the government must have waived

its sovereign immunity.  Such a waiver must be unequivocal, and waivers are

"'strictly construed, in terms of [their] scope, in favor of the sovereign.'"  *Doe v.*

*United States*, 853 F.3d 792, 796 (5th Cir. 2017) (quoting *Lane v. Pena*, 518

U.S. 187, 192 (1996)).

According to the Government, Rangel's APA claims cannot overcome

sovereign immunity.  APA § 704 states, "[a]gency action made reviewable by

statute and final agency action for which there is *no other adequate remedy in*

*a court* are subject to judicial review."  5 U.S.C. § 704 (emphasis added).  In

*Bowen v. Massachusetts*, a case cited by both parties, the Supreme Court noted

that the "primary thrust of § 704 was to codify the exhaustion requirement,"

but "the provision as enacted also makes clear that Congress did not intend

the grant of review in the APA to duplicate existing procedures for review of

agency action."  *Bowen*, 487 U.S. 879, 903 (1988).  The Court noted that when

"Congress enacted the APA to provide a general authorization for review of

agency action in the district courts, it did not intend that general grant of

jurisdiction to duplicate the previously established special statutory

procedures relating to specific agencies."  *Id.*  But the Court also cautioned

against interpreting § 704 too restrictively.[2]

---

[2] In *Bowen*, the Supreme Court rejected a contention that the availability of monetary relief under Tucker Act, in the U.S. Claims Court, triggered § 704's prohibition of an APA claim because the "Claims Court does not have the general equitable powers of a district court to grant prospective relief."  487 U.S. at 904-05.  It further reasoned

2. **Fifth Circuit decisions confirm that § 1503 provides an adequate remedy that forecloses Rangel's APA claims.**

Pursuant to § 704, the parties agree that Rangel's APA claims are foreclosed if another statute provides an adequate remedy. *See* Dkt. 12 at 4 (motion) ("Plaintiff's claims under the APA fail because he has another adequate remedy under 8 U.S.C. § 1503(a)"); Dkt. 22 (response) ("[J]udicial reviewability of agency action under the APA is precluded as to claims where anther statute provides an *adequate* remedy for the grievance asserted."). They simply disagree as to whether 8 U.S.C. § 1503(a) is an adequate remedy.

Section 1503(a) provides a cause of action against the head of a department or agency "for a judgment declaring him [or her or them] to be a national of the United States" if a person "who is within the United States claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof."[3]  8 U.S.C. § 1503(a).  Review of such a claim is de novo. *Sanchez v. Kerry*, 2014 WL 2932275, at *3 (S.D. Tex. June 27, 2014).  The main question is whether a declaration that Rangel is a national of the United States after a

---

that it would be "nothing less than remarkable" if Congress has intended for a specialized court like the Claims Court to review the "complex questions of federal-state interaction" it was considering in the *Bowen* case.  *Id.* at 908.

[3] There are some exceptions related to removal proceedings that are not applicable in the instant case.  *See* 8 U.S.C. § 1503(a).

*de novo* review is an adequate remedy.   Rangel, who challenges what he considered to be burdensome and excessive demands, contends § 1503(a)'s remedy is not adequate.   Dkt. 22 at 6-7.   The Government assert that the final agency action—the only thing that can be challenged—is denial of the passport, and § 1503 remedies that.   Dkt. 23 at 2-3.

The Government cites *Hinojosa v. Horn*, 896 F.3d 305, 312 (5th Cir. 2018) (per curiam), and *Flores v. Pompeo*, 936 F.3d 273, 277 (5th Cir. 2019), to support its position that the remedy available under § 1503 precludes Rangel's APA claims.   Dkt. 12 at 4.   Rangel asserts that these cases are "starkly different from the instant case, both factually and in the underlying claims."   Dkt. 22 at 4.   Rather than citing cases that address his specific type of claim, Rangel attempts to distinguish *Hinojosa* and *Flores*, arguing that because § 1503 does not address his specific type of grievance, it "'*cannot* prevent an APA suit.'"[4] *Id.* (quoting *Cambranis v. Blinken*, 994 F.3d 457, 463 (5th Cir. 2021)).   The Court first analyzes the situations addressed in *Hinojosa* and *Flores* and then considers whether those cases are analogous to Rangel's situation.

---

[4] *Cambranis v. Blinken*, the case from which Rangel pulls this quote, does not support Rangel's argument that the court may exercise subject matter jurisdiction over his APA claims.   In *Cambranis*, the Fifth Circuit held that even though the plaintiff's § 1503 claim was barred by the statute of limitations, the United States did not waive its sovereign immunity via 5 U.S.C. § 702.   994 F.3d at 462.   This holding reflects that the APA cannot not be used to work an end-run around a limitations bar for a statutory claim.   *Id.* at 463-64.   But the *Cambranis* decision has ramifications for Rangel's non-APA claims, as addressed *infra*, Part I.B.

In *Hinojosa*, the two plaintiffs, Raquel Hinojosa and Denisse Villafranca, were deemed to not be U.S. citizens and were denied passports.  896 F.3d at 308.  They brought claims under the habeas corpus statute and the APA.  *Id.* Both plaintiffs had birth certificates from the United States, indicating they were born in Brownsville, Texas, and birth certificates from Mexico, indicating they were born in Mexico.  *Id.*  They were mostly raised in Mexico, but then sought entry into the United States.  *Id.*

Hinojosa applied for a passport and provided the Department with documents that allegedly proved her Mexican birth certificate was false, but the Department disagreed and denied her application.  *Id.*  Villafranca had been issued a U.S. passport that was later revoked because of the Mexican birth certificate.  *Id.* at 309.  Both plaintiffs sought habeas relief and a declaratory judgment and injunctive relief under the APA, and Villafranca also argued that she was entitled to a declaratory judgment under 8 U.S.C. § 1503. *Id.*  The district court had dismissed Plaintiffs' APA claims for lack of subject matter jurisdiction and rejected Villafranca's § 1503 claim because Villafranca was not within the United States.  *Id.*  Both plaintiffs appealed.  *Id.*

The Fifth Circuit, in *Hinojosa*, was tasked with determining whether an "adequate remedy in a court" existed.  *See id.* at 310.  It specifically noted that the "adequacy of the relief available need not provide an identical review that

the APA would provide, so long as the alternative remedy offers the 'same genre' of relief." *Id.* (quoting *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 846 F.3d 1235, 1245 (D.C. Cir. 2017)). The court cautioned that this entails a case-specific evaluation that looks "specifically at the party seeking relief and its particular claim." *Id.* at 310-11. To be "adequate," the remedy "must come via the petitioner's direct appeal," but "the fact that judicial review is delayed by multiple steps of intermediary administrative review does not render the procedure inadequate so long as the agency review is not discretionary." *Id.* at 311. Finally, the court noted that "the existence of an adequate alternative remedy ... requires the discernment of a legislative intent to create such a remedy." *Id.* It is strong evidence that the legislature intended the remedy when it "provides for '[t]he creation of both agency obligations and a mechanism for judicial enforcement in the same legislation.'" *Id.* (quoting *Citizens for Responsibility*, 846 F.3d at 1245).

The Fifth Circuit then analyzed whether § 1503 was indeed an adequate remedy. It reasoned that the statute allowed for judicial review to obtain a declaratory judgment from the head of the department or agency stating that the individual is a national of the United States. *Id.* If the person is not already in the United States, "the path to judicial review is longer because such individuals must first gain admission into the country by the procedures set

forth in §§ 1503(b)–(c)." *Id.* The court then characterized the wrong to be remedied as "the deprivation of U.S. passports on the allegedly erroneous conclusion that they are not citizens." *Id.* at 312. It found that § 1503 was "specifically designed to review such denials." *Id.*

The *Hinojosa* court then considered the procedures available to the plaintiffs under § 1503, which allowed them to apply for a habeas petition to gain entry and, if admitted, to file a claim to obtain their passports once within the United States. At both steps the plaintiffs had the opportunity to show they were citizens, and, if successful, the outcome would "overturn the basis for the deprivation of their U.S. passports."[5] *Id.* The Fifth Circuit concluded that "§ 1503 establishe[d] an adequate alternative remedy in court for these Plaintiffs" because it "provide[d] a direct and guaranteed path to judicial review." *Id.* at 312. Thus, permitting a claim under the APA "would provide a duplicative remedy" and essentially an "end-run around" the process that Congress designed. *Id.*

In *Hinojosa*, like the instant case, the government denied applications for passports because of evidence that is linked to Mexican ancestry. The evidence in *Hinojosa* reflected plaintiffs' possession of parallel U.S. and

---

5 The *Hinojosa* court noted that the plaintiffs would not receive judicial review if the Secretary denied their certificates of identity, and that the APA would indeed kick in if that were the case. 896 F.3d at 312.

14

Mexican birth certificates.  Here, the evidence concerns a birth witnessed by a midwife suspected of fraud, coupled (allegedly) with Rangel's Mexican heritage.  *See* Dkt. 1 ¶¶ 57, 63 ("The only fact that the Department has articulated that weighs against Plaintiff's claim to birth within the United States is the fact that the midwife in attendance of Plaintiff's birth has been 'suspected' of fraud.").  Of course, the *Hinojosa* plaintiffs were complaining that they could not obtain their passports and enter the country and do not appear to have raised alleged discrimination.  Significantly, however, the Fifth Circuit stated that the alternative relief under a statute can be adequate—even if not identical—so long as it provides "the same genre of relief."  896 F.3d at 310 (internal quotation marks omitted).

In *Flores*, the plaintiff filed a claim under § 1503 requesting a declaration of U.S. citizenship and a request for injunctive relief under the APA after his application to renew his passport was denied.  936 F.3d at 274-75.  Like the plaintiffs in *Hinojosa*, Flores had dueling birth certificates that stated he was born in Texas *and* in Mexico.  *Id.* at 275.  The Government moved to dismiss, arguing that Flores's § 1503 claim failed because he resided in Kansas, not Texas (where the case was filed), and that Flores's APA claim was barred because § 1503 provides an adequate alternative remedy.  *Id.*  The district court agreed with the Government that the APA claim was barred because

§ 1503 provides a remedy for the alleged wrong, and it dismissed the § 1503 claim because Flores did not meet his burden of showing that he resided in Texas, which was required under § 1503. *Id.* Flores appealed.

The Fifth Circuit agreed that the district court lacked jurisdiction over the APA claim, citing *Hinojosa* for the principle that § 1503 provides an adequate alternative remedy to Flores's injury. *Id.* at 277. As far as the § 1503 claim, the court reviewed the district court's findings of fact related to Flores's residence for clear error and found none. *Id.* at 276. It therefore affirmed the dismissal, without prejudice, of the § 1503 claim, while noting that Flores had the option of refiling under § 1503 and attempting to establish jurisdiction in a future case. *Id.* at 278.

### 3. Rangel fails to distinguish controlling law.

The Fifth Circuit's decisions in *Hinojosa* and *Flores*, which similarly involve plaintiffs seeking U.S. passports, strongly support the conclusion that § 1503 provides an adequate alternative remedy for Rangel. Rangel's attempts to distinguish these cases are not persuasive.

According to Rangel, *Hinojosa* and *Flores* do not control because the plaintiffs there did not seek redress for procedural wrongs committed while adjudicating their passport applications, like discrimination, denial of due

process, or arbitrary and capricious heightening of evidentiary standards.[6] Dkt. 22 at 5. Rangel characterizes these wrongs as separate from the denial of the application itself, such that § 1503 provides no adequate remedy for those claims. *Id.* at 6. Rangel also asserts that § 1503 does not provide the injunctive and declaratory relief he seeks.[7] *Id.*

In reply, the Government correctly notes that Rangel cannot circumvent the statutory requirements of § 1503 and the APA with artful pleading. Dkt. 23 at 1. The Government asserts that § 1503 is the exclusive remedy for an individual who seeks a declaration of nationality following a passport denial, and the APA reviews final agency action, not procedures. *Id.* at 2.

Rangel's attempt to distinguish *Flores* and *Hinojosa* is insufficient. First, his contention that neither case involved a request for an injunction is incorrect. The *Flores* plaintiff, like Rangel, sought injunctive relief, yet the

---

[6] Rangel also complains that the Government deviated from its "own governing regulations as well as their commitment under the *Catelano v. Clinton* Settlement Agreement"; all of these complaints attack the procedure the Government used in adjudicating Rangel's passport application. *See* Dkt. 22 at 5.

[7] Rangel seeks an injunction prohibiting the Government "from applying a heightened evidentiary standard to passport applicants of Mexican heritage born with a midwife in attendance, and injunctive relief enjoining [the Government] from enforcing a de facto requirement that certain passport applicants complete the DD-5513 and divulge highly personal private and family information beyond the scope of typical applications for U.S. passports without a clearly established reason." Dkt. 22 at 10. He seeks a related declaration that the Government's general "practice of treating Plaintiff and others of Mexican ancestry born to midwives" to heightened requirements of proof is unconstitutional. *Id.*

17

Fifth Circuit affirmed the trial court's holding that § 1503 provided an adequate remedy. *See Flores*, 936 F.3d at 275. Second, *Hinojosa* implicitly forecloses Rangel's attempt to separate his procedural complaints from the denial of the passport itself. There, the court stressed "the fact that judicial review is delayed by multiple steps of intermediary administrative review does not render the procedure inadequate so long as the agency review is not discretionary." 896 F.3d at 311. By that rationale, Rangel's complaints about the additional steps needed to obtain his passport do not negate the fact that his goal was to get a passport. Section 1503 provides an adequate means to reach that goal.

A recent case from the Northern District of Georgia bolsters the conclusion that § 1503(a) provides an adequate remedy despite Rangel's request for more than a declaration of citizenship. In *Mize v. Pompeo*, two plaintiffs, James Derek Mize and Jonathan Daniel Gregg, were married and had a daughter born in England through a gestational surrogate there who had carried an anonymously donated egg that was fertilized with Gregg's sperm. 482 F. Supp. 3d 1317, 1326 (N.D. Ga. 2020). Under the Department's regulations, two married men could not have a child born abroad who is considered having been born in wedlock. *Id.* at 1325-26. The plaintiffs argued

that the Department misapplied that regulation to deny their daughter a Consular Report of Birth Abroad and a U.S. passport.  *Id.*

Most relevant here, the plaintiffs in *Mize* argued that the Department's actions were arbitrary, lacked a rational basis, and were contrary to law.  *Id.* at 1342-43.  The court, noting that "the APA 'does not provide additional judicial remedies in situations where Congress has provided special and adequate review procedures' under another statute," and that the alternative procedures "need only 'offer[] the same genre of relief,'" found that § 1503 provided an adequate remedy.  *Id.* at 1343 (quoting *Bowen*, 487 U.S. at 903, and *Hinojosa*, 896 F.3d at 310).

The *Mize* plaintiffs asserted that § 1503 was inadequate because, in addition to a declaration of citizenship, they also sought "a declaration condemning Defendants' 'policy and practice' towards the children of married same-sex couples" and "a permanent injunction enjoining Defendants from continuing to apply that policy and practice."  *Id.*  The court noted that the plaintiffs could not obtain this relief under the APA because it was seeking "'wholesale improvement of a program by court decree'—which the APA forbids"[8]—and the injunction exceeded what was needed for "complete relief."

---

[8] In *Lujan v. National Wildlife Federation*, the Supreme Court instructed that "flaws in [an] entire 'program' ... cannot be laid before the courts for wholesale correction under the APA"; instead, a "case-by-case approach" is necessary.  497 U.S. 871, 893-94 (1990).  Absent a contrary directive from Congress, courts may "intervene in the

*Id.* (quoting *Dvash-Banks v. Pompeo*, 2019 WL911799, at *6 (C.D. Cal. Feb. 21, 2019), and relying on *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990), and *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) ("'[I]njunctive relief should be no more burdensome to the defendants than necessary to provide complete relief to the plaintiffs.'" (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979))).

Here, Rangel attempts to seek "wholesale improvement" of the citizenship evaluation process for individuals of Mexican ancestry born with assistance of midwives.  Yet courts can only review final agency actions; "more sweeping actions are for the other branches." *Lujan*, 497 U.S. at 894.  The final agency action is the denial of passport application for which § 1503(a) provides redress.  Accordingly, Rangel's APA claims should be dismissed.

## B.   The Court lacks jurisdiction over Rangel's constitutional claims.

The next issue concerns this Court's jurisdiction over Rangel's due process and equal protection claims.  Much like its arguments regarding Rangel's APA claims, the Government argues that the "exclusive remedy" provided by § 1503(a) renders the Government immune from Rangel's constitutional claims.  Dkt. 12 at 5 (quoting *Cambranis v. Blinken*, 994 F.3d

---

administration of the laws only when, and to the extent that, a specific 'final agency action' has an actual or immediate threatened effect." *Id.* at 894.

457, 466 (5th Cir. 2021)).   The Government primarily asserts that the "adequate remedy" provided by § 1503(a) preserves its immunity under APA § 704.[9]   *See id.* at 5 (citing, *inter alia*, *Espinoza v. Pompeo*, 2020 WL 1941300, at *6 (W.D. Tex. Apr. 22, 2020)); Dkt. 23 at 3-4 (discussing *Espinoza* and district court's decision in *Cambranis v. Pompeo*, 2020 WL 1447380, at *10 (W.D. Tex. Mar. 24, 2020)).   But its invocation of the Fifth Circuit's *Cambranis* decision has other implications for sovereign immunity as well.

In *Cambranis*, the Fifth Circuit affirmed the district court's dismissal of a claim that the Government had violated the Citizenship Clause of the Fourteenth Amendment by denying the plaintiff's passport application. 994 F.3d at 460, 462.   The court concluded that plaintiff's remedy under § 1503(a) was exclusive, thereby triggering an exception to the Government's waiver of sovereign immunity under APA § 702.   *Id.* at 462, 465.

The full text of § 702 states:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.   An action in a court of the United States seeking relief other than money

---

9 The Government also cites authorities addressing the *merits* of Rangel's due process claim.   *See* Dkt. 23 at 4 (arguing, *inter alia*, that the Government need not "provide the same procedural protections for every deprivation of a property or liberty interest").   Because the Government has only sought dismissal of that claim for lack of jurisdiction, *i.e.*, based on sovereign immunity, the Court declines to resolve whether Rangel's constitutional claims are cognizable.

damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: Provided, [t]hat any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance. *Nothing herein* (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) *confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.*

5 U.S.C. § 702 (emphasis added).

Much like here, there was no dispute in *Cambranis* that the plaintiff's constitutional claim met the two threshold requirements for § 702's general waiver of sovereign immunity—*i.e.*, "some 'agency action' affecting him in a specific way" that formed the basis of his request for judicial review, and an allegation that plaintiff "suffered legal wrong because of the challenged agency action" or was "adversely affected or aggrieved by that action within the meaning of a relevant statute." 994 F.3d at 463 (internal quotation marks omitted). Rather, the issue centered around the italicized clause above— referenced in *Cambranis* as the "'any other statute' proviso," *id.*, that "prevents

22

plaintiffs from exploiting the APA's waiver to evade limitations on suit contained in other statutes," *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012).

In *Cambranis*, the Fifth Circuit resolved "whether Congress intended § 1503(a) to be an 'exclusive remedy' for the type of grievance it was designed to redress: where a person within the United States is denied a passport, or other right of citizenship, on the ground that he is not a national of the United States." 994 F.3d at 465. Based on Supreme Court precedent, the Fifth Circuit concluded the answer is yes. *Id.* (discussing *Block v. N.D. ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 280-86 (1983)). As the Fifth Circuit explained, "Section 1503(a) is a precisely drawn, detailed statute that sets out a remedial scheme for persons within the United States who are denied a privilege of citizenship, which suggests Congress intended it to preempt more general remedies." *Id.*; *see also id.* at 466 ("[W]e hold that Congress intended § 1503(a) to be the exclusive remedy for a person within the United States to seek a declaration of U.S. nationality following an agency or department's denial of a privilege or right of citizenship upon the ground that the person is not a U.S. national."). And because the plaintiff's claim under § 1503(a) was barred by limitations, allowing him "to seek the same relief for the same grievance provided for in § 1503(a) while sidestepping its statute of limitations would

23

render that restriction a nullity." *Id.* at 465. Thus, the "any other statute" language in APA § 702 "maintains the United States' sovereign immunity against Cambranis's constitutional claim ...." *Id.* at 466.

Here, there is no dispute that § 1503(a), if exclusive, would foreclose Rangel's broad requests for declaratory and injunctive relief to invalidate or preclude the Department's requests for additional information from the relevant subset of passport applicants. Indeed, the only relief available under § 1503(a) is a declaration that the plaintiff qualifies as "a national of the United States ...." 8 U.S.C. § 1503(a). Permitting Rangel to "sidestep[ ]" this limitation would thwart the "precisely drawn ... remedial scheme" that Congress provided when enacting § 1503(a). *See Cambranis*, 994 F.3d at 465.

Rangel's attempt to distinguish his due process and equal protection claims from the Citizenship Clause claim in *Cambranis* or § 1503(a) is not persuasive. *See* Dkt. 22 at 7-9. Contrary to his assertions, the asserted violations of his due process and equal protection rights are inextricably intertwined with the Department's ruling that Rangel is not a U.S. citizen entitled to a U.S. passport—a ruling for which § 1503(a) provides relief. Indeed, Rangel would not have standing to bring his constitutional claims at all if the Department had *granted* his application and found that he *is* a citizen of the United States. *Cf. City of Hearne, Tex. v. Johnson*, 929 F.3d 298, 302

24

(5th Cir. 2019) (holding that plaintiff lacked standing to assert an equal protection claim premised on the City attorney's interference with process for obtaining certification of a petition, when the City acted on the petition anyway and did so "as completely as it could have within the necessary timeframes").

In sum, Rangel's allegations ultimately hinge on whether he qualifies as a U.S. citizen. Congress has prescribed an exclusive remedy for Rangel's complaints by enacting § 1503(a), which does not authorize Rangel's other requested relief. *See Cambranis*, 994 F.3d at 466. Thus, "the 'any other statute' proviso of [APA] § 702 maintains the United States' sovereign immunity against" Rangel's constitutional claims. *See id.* The Court therefore should dismiss Rangel's due process and equal protection claims for lack of jurisdiction, irrespective of the Government's separate contention that APA § 704 also bars jurisdiction over those claims.[10]

---

[10] Whether the broad waiver of sovereign immunity in § 702—even for non-APA claims—is limited by APA § 704, which requires that there be a "final agency action for which there is no other adequate remedy in a court," 5 U.S.C. § 704, has been the source of "doctrinal confusion" within the Fifth Circuit. *See Entergy Servs., Inc. v. U.S. Dep't of Labor*, 2014 WL 8507568, at *14 (E.D. La. Dec. 15, 2014) (making this observation). Unlike the district court opinions cited by the Government, *see* Dkt. 12 at 5; Dkt. 23 at 3-4, this Court is not convinced that that APA § 704's "adequate remedy" and "final agency action" can divest a federal court of jurisdiction over non-APA claims for which § 702 waives sovereign immunity.

The Fifth Circuit's decision in *Alabama-Coushatta Tribe of Texas v. United States*, 757 F.3d 484, 489 (5th Cir. 2014), recognized that § 704's requirements only restrict the general waiver of sovereign immunity in § 702 with respect to *APA claims*. They do not apply to claims asserted by persons "adversely affected or aggrieved by agency action within the meaning of a relevant statute"—*i.e.*, to *non*-APA claims. *Id.*

## C.   The Court lacks jurisdiction to issue the broader declaratory relief or the injunctive relief that Rangel seeks.

The Government also seeks dismissal of Rangel's claims for injunctive

and declaratory relief "that exceed the narrow remedy" provided under

8 U.S.C. § 1503(a).  Dkt. 12 at 5-6.  The adequacy and exclusivity of Rangel's

---

(quoting 5 U.S.C. § 702 and citing *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 186-87 (D.C. Cir. 2006)).

The two other Fifth Circuit decisions discussed in *Cambranis*, 2020 WL 1447380, at *11 and *Espinoza*, 2020 WL 1941300, at *5, do not suggest that APA § 704 imposes additional jurisdictional hurdles for non-APA claims.  The decision in *Taylor-Callahan-Coleman Cntys. Dist. Adult Probation Dep't*, 948 F.2d 953, 956 (5th Cir. 1991), *abrogation recognized by Data Mktg. P'ship, L.P. v. U.S. Dep't of Labor*, 45 F.4th 846, 854 n.1 (5th Cir. 2002)), did not parse the types of claims under APA § 702 and the implications of those classifications on the applicability of § 704.  And the Fifth Circuit recently declined to follow *Taylor-Callahan* even for its ultimate holding that the lack of final agency action barred review.  *See Data Mktg. P'ship*, 45 F.4th at 854 n.1 (holding that *Taylor-Callahan* "was contradicted by the Supreme Court's subsequent decisions in *Sackett* and *Hawkes*, so we aren't bound by it").

The other Fifth Circuit case, *Veldoen v. U.S. Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994), is even less apposite.  There, sailors asserted that the Coast Guard exceeded its statutory authority by investigating an offshore collision, but the underlying statutes did not provide for judicial review.  *Id.* at 225.  Thus, the only potential basis for review was under the APA itself—specifically, § 704, which necessarily triggered its final-agency-action requirement.  *Id.* ("The APA permits 'non-statutory' judicial review only of 'final agency action.'") (quoting 5 U.S.C. § 704).  The *Veldoen* court did not hold that a non-APA claim must satisfy § 704.

Thus, even if § 704 imposes jurisdictional requirements *for APA claims*, as the Fifth Circuit thus far has held, *see Data Mtkg. P'ship*, 45 F.4th at 853, the most relevant indication is that § 704 has no bearing on a federal court's jurisdiction over *non-APA* claims for which § 702 waives sovereign immunity, *see Alabama-Coushatta*, 757 F.3d at 489 (citing *Trudeau*, 456 F.3d at 186-87).  Rather, for those claims, the basis for jurisdiction rests, not on APA § 704, but on the general federal question statute, 28 U.S.C. § 1331.  *See, e.g.*, *Trudeau*, 456 F.3d at 187 (finding subject-matter jurisdiction under § 1331 upon concluding that "APA § 702's waiver of sovereign immunity permits ... [plaintiff's] nonstatutory and First Amendment actions").

remedy under § 1503 signifies that the Government is immune from those claims under § 704 (for Rangel's APA claims) and § 702 (under the "any other statute" proviso, for Rangel's constitutional claims).  *See supra* Parts I.A & I.B.

But there is another reason why the Court lacks jurisdiction to issue relief beyond a declaration as to whether Rangel qualifies as a U.S. citizen. Although not raised by the Government, Rangel lacks Article III standing to standing to pursue broader declaratory relief or any injunctive relief.  *See Bauer v. Texas*, 341 F.3d 352, 357 (5th Cir. 2003) ("Although [defendant] has not raised the issue of standing, we may consider it *sua sponte*.").

"In the context of prospective injunctive and declaratory relief, past exposure to illegal conduct, by itself, does not evidence a present case or controversy and thus cannot establish standing."  *Machete Prods., L.L.C. v. Page*, 809 F.3d 281, 288 (5th Cir. 2015) (citing *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)); *see also Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019) (emphasizing that "injunctive and declaratory relief 'cannot conceivably remedy any past wrong'") (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 108 (1998)).  Instead, "a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury *in the future*."  *Bauer*, 341 F.3d at 358 (citing, *inter alia*, *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983)).  The requirement to show "either continuing harm or a

real and immediate threat of repeated injury in the future" applies to both requests for injunctive and declaratory relief. *Id.* (collecting authority).

Another bedrock principle forbids a plaintiff from seeking redress for harms to third parties who are not before the Court. *See Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("The Art. III judicial power exists only to redress or otherwise to protect against injury *to the complaining party*, even though the court's judgment may benefit others collaterally."). This is true even if the plaintiff himself "has alleged injury sufficient to meet the 'case or controversy' requirement ...." *Id.* (stating general rule that "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties"); *see also, e.g.*, *Danos v. Jones*, 652 F.3d 577, 582 (5th Cir. 2011) (invoking this principle to hold that plaintiff lacked standing to pursue a constitutional claim).

The foregoing limitations bar Rangel's broad requests for declaratory relief and any injunction. His requested injunction seeks to prevent the Government from "applying its discriminatory practice of applying a heightened evidentiary standard to passport applications submitted by citizens born with a midwife in attendance" and "applying its discriminatory practice of requesting Plaintiff and applicants like Plaintiff divulge highly personal private and family information on the Form DS-5513 ...." Dkt. 1 at

25 (emphasis added). Rangel also seeks a related declaration that the Government's "practice of treating Plaintiff and others of Mexican ancestry born to midwives" as "categorically suspicious" and demanding that they submit additional information to prove their U.S. citizenship. *Id.*

But Rangel's allegations target the Department's *prior* conduct while adjudicating and then denying his *previous* passport application. *See* Dkt. 1 ¶¶ 37-48. Nowhere does Rangel indicate that he faces a "substantial likelihood" of being subjected to similar alleged wrongs "in the future." *See Bauer*, 341 F.3d at 358 (holding that plaintiff lacked standing to obtain a declaration that state guardianship statutes are unconstitutional when her guardianship proceeding had concluded). Moreover, Rangel's requested declaratory and injunctive relief impermissibly seeks to vindicate the rights of "others of Mexican ancestry born to midwives ...." Dkt. 1 at 25 (request for declaratory judgment regarding other applicants); *see also id.* (seeking to enjoin "discriminatory practice" for "passport applications submitted by citizens born with a midwife in attendance"). Settled law holds that Rangel lacks standing to pursue that relief. *See Warth*, 422 U.S. at 499. Rangel's lack of standing apart from a declaration of citizenship under § 1503(a) reinforces that his other requests for declaratory and injunctive relief should be dismissed.

### D.      The Little Tucker Act does not confer jurisdiction here.

The Government notes that the Little Tucker Act waives sovereign immunity and vests district courts with jurisdiction in cases involving less than $10,000 in controversy.  Dkt. 12 at 6 (citing 28 U.S.C. § 1346(a)(2)) (the "Little Tucker Act").  They argue that the Little Tucker Act does not apply here because Rangel is not seeking damages.  *Id.* at 6-7.

Rangel tacitly concedes that the Little Tucker Act does not apply.  He does not invoke the Act in his complaint or in his response, Dkts. 1, 22, despite his burden to show that subject matter jurisdiction exists, *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d at 286 (plaintiff's burden).  The Court agrees with the Government that the Little Tucker Act is inapplicable.  Accordingly, it does not supply jurisdiction over Rangel's claims.

## II.    <u>Secretary Blinken is the only proper party under § 1503(a).</u>

As its final contention, the Government argues that because the Rangel's claim can only be brought under § 1503(a), Secretary Blinken is the only proper defendant.  Dkt. 12 at 7.  Rangel disputes this position by presuming that his constitutional and APA claims can proceed.  Dkt. 22 at 11-12.

Because the APA and constitutional claims should be dismissed, *see supra* Parts I.A & I.B, the only remaining claim is the § 1503(a) claim.  There is no dispute that Secretary Blinken is the only proper party to that claim.

8 U.S.C. § 1503 (limiting the available action to the "head of such department or independent agency").   Accordingly, this Court should grant the Government's motion to dismiss the claims against all parties except for Secretary Blinken.

## Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Defendants' motion to dismiss (Dkt. 12) be granted in its entirety, and that all of Plaintiff's claims except for the claim under 8 U.S.C. § 1503(a) for a declaratory judgment against Secretary Blinken be **DISMISSED**.

**The parties have fourteen days from service of this Report and Recommendation to file written objections.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).   Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.  *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).**

Signed on February 21, 2023, at Houston, Texas.

_____
Yvonne Y. Ho
United States Magistrate Judge

31